FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 07, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAMELA BYRD, wife, and JOHN DOE BYRD, husband,<br><br>                Plaintiffs,<br><br>    v.<br><br>USAA CASUALTY INSURANCE COMPANY, a foreign corporation,<br><br>                Defendant. | No. 4:18-CV-05130-SMJ<br><br>**ORDER ON SUMMARY JUDGMENT MOTIONS** |

On October 17, 2017, Plaintiffs Pamela Byrd and John Doe filed a lawsuit in Benton County against Defendant USAA Casualty Insurance Company. ECF No. 1-2. Defendant removed the action to federal court on July 27, 2018, ECF No. 1, soon after the amount in controversy became ascertainable, ECF No. 12. The Complaint alleges (1) breach of contract; (2) common law bad faith; (3) violation of the Washington Insurance Fair Conduct Act ("IFCA"); (4) violation of the Washington Consumer Protection Act ("CPA"); and (5) breach of fiduciary duty. ECF No. 1-2 at 6; ECF No. 3 at 2–3.

ORDER ON SUMMARY JUDGMENT MOTIONS **-** 1

Before the Court is Defendant's Motion for Summary Judgment, ECF No. 6.[1] Defendant requests the Court grant summary judgment in its favor on Plaintiffs' breach of contract, CPA, IFCA, and bad faith claims.[2] *Id.* Also before the Court is Plaintiffs' cross-motion for summary judgment on the breach of contract, IFCA, and bad faith claims, ECF No. 9.

The Court held a hearing on the motions on November 1, 2018. Having reviewed the pleadings and the file in this matter, and having heard the parties' arguments on the record, the Court is fully informed. For the following reasons, the Court grants in part and denies in part the parties' motions.

## I. LEGAL STANDARD

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate if the record establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th

---

[1] Defendant filed a *praecipe* on August 28, 2018 to comply with redaction rules, ECF No. 8.

[2] Plaintiffs also alleged a breach of fiduciary duty claim, which Defendant fails to address. As such, the Court construes the motion as one for partial summary judgment.

Cir. 1982).

The moving party has the initial burden of showing that no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must point to specific facts establishing a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986).

"[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). If the nonmoving party fails to make such a showing for any of the elements essential to its case as to which it would have the burden of proof at trial, the trial court should grant the summary judgment motion. *Celotex*, 477 U.S. at 322.

The Court is to view the facts and draw inferences in the manner most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999). And, the Court "must not grant summary judgment based on [its] determination that one set of facts is more believable than another." *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009).

## II. BACKGROUND

**A. Factual Background**

On September 4, 2015, Plaintiff Pamela Byrd was involved in an automobile accident. Ms. Byrd alleges she swerved to avoid crashing into a potato truck. ECF No. 8-2 at 49. She hit a stop sign and ended up in a field adjacent to the highway. *Id.* She was thereafter transported to the Kadlec Medical Center in an ambulance.



ECF No. 8-4 at 27.

The physician who examined Ms. Byrd at the Kadlec Medical Center Emergency Department noted: "The patient presents with a complaint of neck, back, and bilateral arm pain . . . The pertinent information regarding this accident is patient

was driving on the highway when she swerved to avoid another vehicle and ran off the road hitting a pole and ended up in a field." ECF No. 8-3 at 31.

Also on the same day, the Washington State Patrol prepared a press memorandum with the incident details. *Id.* at 19. Based on this memorandum, the *Tri-City Herald* published a newspaper article, reporting that a woman was injured "after swerving to avoid a potato truck in Franklin County, according to the Washington State Patrol." *Id.* at 21.

On September 8, 2015, Jason Langston of the Franklin County Fire District prepared a narrative that was incorporated into a September 21, 2015 Incident Report prepared by Amber MacHugh. *Id.* at 23. Langston, MacHugh, and others were the first responders who arrived at the scene within minutes of the collision. Langston noted that upon dispatch, they were notified of "one patient complaining of neck and chest pain." He also noted, "Patient was found still sitting in the vehicle. Patient stated she was cut off by two farm semi-trucks at the intersection, steered to avoid a collision and over-corrected." *Id.* The Incident Report also contains observations by various other first responders at the scene of the accident. *Id.*

On September 9, 2015, Washington State Patrol Trooper Brian Bond prepared a Collision Report, which included his observations of the scene and Ms. Byrd's narrative of the accident. *Id.* at 14–17. The narrative of the event states: "Vehicle 1 was southbound SR395 approaching Vineyard Drive. A potato truck was crossing

SR395 westbound on Vineyard Drive. Driver of Vehicle 1 swerved to avoid the potato truck. Vehicle 1 left the roadway and struck a stop sign." *Id.* at 16.

On September 10, 2015, Ms. Byrd notified Defendant of the accident. *Id.* at 6. On September 17, 2015, Defendant called Rafael Garcia, who was the first bystander to arrive on the scene. Garcia stated he did not actually witness the events leading up to the accident. *Id.* at 8. He could not tell the representative "what happened in the [accident] nor could he confirm that the potato truck came across the freeway into path of [Ms. Byrd's vehicle]." *Id.*

On July 21, 2017, Ms. Byrd filed an uninsured motorist ("UM") claim with Defendant. ECF No. 17 at 5. She submitted all the documents mentioned above, as well as a copy of *Nationwide Insurance v. Williams*, 71 Wash. App. 336 (1993). *Id.* On August 15, 2017, Defendant declined to pay Ms. Byrd UM benefits and informed her that the evidence she provided did not meet the excited utterance exception. ECF No. 8-3 at 41. Two weeks later, Defendant clarified its denial by stating that Ms. Byrd failed to meet Washington evidentiary requirements for coverage by not submitting corroborating competent evidence. *Id.* at 45. On October 17, 2017, Plaintiffs initiated this lawsuit. ECF No. 1-2.

Two months later, on December 19, 2017, Garcia executed a declaration. ECF No. 10-3 at 13. He stated:

> 3. As I was near the gas station, I saw a plume of dirt near the intersection and then saw Pamela Byrd's vehicle in a dirt field

on the southwest corner of the intersection of HW 395 and Vineyard Drive;
4. I immediately drove through the field to Ms. Byrd's vehicle and I was the first bystander to arrive; I arrived within seconds of Ms. Byrd leaving the roadway.
5. When I arrived, Ms. Byrd was still in her vehicle and still had her seatbelt on. Her car was damaged and she appeared very shaken up and seemed dazed. As soon as I arrived, she repeatedly stated that she had been run off the road by a "potato truck." She said it over and over again;
6. I looked up and saw two white 10-wheel trucks stopped, facing westbound on Vineyard Drive, just west of the intersection with HW 395. A few minutes later, both trucks left the scene, again traveling westbound on Vineyard Drive. I do not know who owned the trucks or whether they were affiliated with any particular company.

ECF No. 8-2 at 55. Defendant received Garcia's declaration in April 2018 during discovery. ECF No. 8.

**B.    Uninsured Motorist Coverage Policy**

Ms. Byrd's Automobile Insurance Policy, issued by Defendant with a policy period of June 27, 2015 to September 17, 2015, contains the following pertinent UM provision:

**PART C – UNDERINSURED MOTORIST COVERAGE
(referred to as UIM Coverage)**

UIM Coverage includes uninsured motorist coverage.

**DEFINITIONS**

. . . .

C.    "**Uninsured motor vehicle**" means a land motor vehicle or **trailer** of any type:

> . . . .
>
> 3. That is a hit-and-run motor vehicle. This means a motor vehicle whose operator or owner cannot be identified, and which causes an accident involving:
>
>   a. **You** . . . ; or
>
>   c. **Your covered auto**.
>
> If there is no physical contact with the vehicle causing the accident[, i.e., phantom vehicle,] the facts of the accident must be proved by *competent evidence other than the testimony of a **covered person*** . . . .

ECF No. 8-2 at 26–27 (italics added).

## III. DISCUSSION

### A. Admissibility of evidence

The Court may consider only admissible evidence in ruling on a motion for summary judgment. *See Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). As such, the Court first resolves any evidentiary disputes.

Federal Rules of Evidence "ordinarily govern in diversity cases" because most are procedural in nature. *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995). However, federal rules do not supplant "all state law evidentiary provisions with federal ones." *Id.* When state evidence rules are "intimately bound up" with the state's substantive decisionmaking, state rules must be given full effect by courts sitting in diversity. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citation omitted).

**1. Authentication**

Unauthenticated documents may not be considered in a motion for summary judgment. *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994). Authentication is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Exhibits attached to affidavits must be properly identified and authenticated. *Id.* at 774; Fed. R. Civ. P. 56(c)(4).

Defendant argues the Franklin County Fire District Incident Report prepared by MacHugh is inadmissible because it has not been authenticated under Federal Rule of Evidence 901. ECF No. 8-3 at 23; ECF No. 18 at 14–15. Indeed, the Incident Report was submitted as an exhibit to Plaintiffs' counsel's declaration in support of Plaintiffs' summary judgment motion. Plaintiffs' counsel certainly lacks personal knowledge and is not "someone through whom the documents could be admitted at trial."[3] *See Orr*, 285 F.3d at 773–74.

While Plaintiffs subsequently submitted an affidavit from MacHugh stating

---

[3] The Kadlec Medical Center Emergency Department physician notes, Washington State Patrol press memorandum, Collision Report, and *Tri-City Herald* article excerpt, which were also submitted with Plaintiffs' counsel's declaration, are inadmissible for the same reasons. *See Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995). Because the documents were submitted along with counsel's declaration instead of attached to an exhibit list, "the alternative means to authentication permitted by Federal Rule of Evidence 901(b) and 902" are not considered. *Orr*, 285 F.3d at 777.

that she made the report, ECF No. 21-1 at 5–6, the supporting affidavit is improper under Federal Rule of Civil Procedure 6(c)(2) because it was not filed with the summary judgment motion. As such, the Incident Report is inadmissible.

The only remaining evidence proffered in support of Plaintiffs' UM claim is Garcia's declaration. The Court rejects Defendant's argument that Garcia lacked personal knowledge to attest to the facts stated in his declaration. He was the first bystander who arrived to the scene mere seconds after the accident, and discussed in his declaration what he observed upon arrival. As such, the declaration is admissible as long as the contents within are also admissible.

### 2. Excited utterances

Defendant contends that Garcia's declaration is inadmissible because it contains hearsay; Garcia notes, "[Ms. Byrd] repeatedly stated that she had been run off the road by a 'potato truck.'" ECF No. 8-2 at 55. Defendant argues that the declaration does not rise to the level of "competent evidence" required by the UM statutory and policy requirements. ECF No. 8 at 15.

There is no question the statement is hearsay because it is being offered to prove the truth of the matter asserted—that Ms. Byrd had been run off the road by a potato truck. In dispute is whether the hearsay statement falls within the excited

utterance exception.[4]

Here, Plaintiffs cite Washington state's excited utterance rule, *see* ECF No. 9 at 17–20, while Defendant appears to reference both the state rule, *see* ECF No. 8 at 16–19, and its federal counterpart, *see* ECF No. 8 at 15–16. Upon reviewing the principles set forth in *Nationwide Insurance*, the Court concludes the excited utterance exception is intimately bound up with the state's substantive underinsured motorist statute, which the insurance policy derives from. Consequently, the Court borrows Washington Rule of Evidence ("ER") 803(a)(2) in its analysis.

Under ER 803(a)(2), an excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "Stressful circumstances are believed to operate to temporarily overcome the ability to reflect and consciously fabricate." *State v. Dixon*, 37 Wash. App. 867, 872 (1984).

"First, a startling event or condition must have occurred. Second, the statement must have been made while the declarant was under the stress of excitement caused by the event or condition. Third, the statement must relate to the startling event or condition." *State v. Chapin*, 118 Wash. 2d 681, 686 (1992). Here,

---

[4] An insured may use evidence of her own excited utterances to satisfy the UM statutory and policy requirements for corroboration by competent evidence. *Nationwide Ins.*, 71 Wash. App. at 341 (noting that the language under the insurance policy and Revised Code of Washington § 48.22030(8) are the same).

ORDER ON SUMMARY JUDGMENT MOTIONS - 11

the Court finds the first and third elements easily met.

The second element, on the other hand, is the "essence" of the rule and thus, attracts the most scrutiny. *Id.* at 687. For a statement to have been made under stress of excitement, it must be a spontaneous or instinctive utterance of thought and not the product of premeditation, reflection, or design. *Burmeister v. State Farm Ins. Co.*, 92 Wash. App. 359, 369 (1998) (citing *Beck v. Dye*, 200 Wash. 1, 9–10 (1939)). "The key . . . is spontaneity." *Chapin*, 118 Wash. 2d at 688. The crucial question is "whether the declarant was still under the influence of the event to the extent that the statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment." *State v. Briscoeray*, 95 Wash. App. 167, 173 (1999).

The work of a court is easier when there are affidavits indicating "the severity of [the insured's] injuries or whether [the insured] was in a state of excitement from those injuries at the time the statement was made." *Burmeister*, 92 Wash. App. at 370. However, such affidavits are not easily obtainable for many reasons, including that phantom vehicle collisions do not always result in severe injuries, and laypersons are unaware of the requirements for an excited utterance.

Where, as here, there is no affidavit containing such language, the Court may look to an insured's "intervening actions or the exercise of a choice or judgment," which indicates that he or she was not acting under stress of excitement.

ORDER ON SUMMARY JUDGMENT MOTIONS - 12

*McCandless v. Inland Nw. Film Serv., Inc.*, 64 Wash. 2d 523, 533 (1964). "Participating in subsequent events, engaging in acts, or speaking words" detract from the spontaneity requirement and show opportunity for reflection. *Id.*

Here, Garcia's declaration records that he reached Ms. Byrd, who was still in her car with her seatbelt on, within "seconds" of the accident. ECF No. 8-2 at 55. She "appeared very shaken up and seemed dazed." *Id.* Defendant contends the statements were not spontaneous and reliable because Ms. Byrd had time to reflect upon the accident and was not under the excitement or stress of the accident. *Id.* at 18–19; ECF No. 18 at 20–21. It argues there were several intervening events that influenced the statements: Ms. Byrd (1) drove off the road, (2) hit a stop sign, and (3) came to a complete stop. ECF No. 29 at 4. In other words, it argues the accident occurred and ended in the brief instant that Ms. Byrd encountered the potato truck.

Defendant's characterization of the accident is unpersuasive. Defendant cites no authority, nor can the Court find any, where a court severed an accident into isolated segments to support a finding of intervening events. Moreover, under Defendant's characterization, every phantom vehicle UM claim would involve at least one intervening action, as an insured who successfully avoided a phantom vehicle collision and ensuing damage at the moment of apparent impact would have no reason to file a claim. As such, the insured would almost always be denied benefits, as this would tend to negate the stress-of-excitement requirement. *See*

*McCandless*, 64 Wash. 2d at 533.

Viewing the accident as a continuous event up until Ms. Byrd came to a complete stop upon hitting the stop sign, the Court concludes there were no intervening actions or the exercise of choice. *See id.* Ms. Byrd was still sitting in the car, with her seatbelt on, when Garcia arrived. There is no evidence indicating that Ms. Byrd called 911 or anybody else prior to being discovered in a "dazed" state. She certainly did not exit the vehicle, walk around the vehicle, and converse with Garcia prior to making a pertinent statement. *See id.* at 533–34 (rejecting statements of insured who was under "great emotional shock, stress and anxiety" because the insured inspected his truck, conversed with a witness, walked to the service station, and dialed a telephone number).

Accordingly, the Court concludes that Ms. Byrd's spontaneous statement, made mere seconds after the accident, was not reflected upon and was made under stress of excitement. Consequently, Ms. Byrd's declaration is an admissible excited utterance, and Garcia's declaration in its entirety is admissible.

**B.     Breach of contract/coverage**

Under the terms of the insurance policy, the issue is whether Ms. Byrd provided sufficient "competent evidence" to show that she was involved in a phantom vehicle collision. If so, Plaintiffs were entitled to receive UM benefits.

Based on the parties' submissions, there seems to be no dispute that the

insurance policy was a valid contract. In this diversity action, the Court turns to Washington law to interpret the insurance policy. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). In a dispute concerning insurance coverage, the question of whether a particular claim is covered by an unambiguous insurance policy is a question of law to be determined by the Court. *See Weyerhaeuser Co. v. Aetna Cas. & Sur. Co.*, 123 Wash. 2d. 891, 897 (1994).

Here, Ms. Byrd told Garcia that she had been run off the road by a potato truck. Garcia further attested to seeing "two white 10-wheel trucks" shortly thereafter. Because this "tends to strengthen or confirm" Ms. Byrd's testimony that there were two potato trucks involved in the collision, s*ee Powell v. Viking Ins. Co.*, 44 Wash. App. 495, 499 (1986), the Court determines that Ms. Byrd presented sufficient competent evidence of a phantom vehicle collision. As such, Plaintiffs are entitled to UM benefits under the policy. The Court grants Plaintiffs summary judgment on the breach of coverage claim.

**C.  Bad faith**

An insurer has a duty of good faith to its policyholder, and violating that duty may give rise to a tort action for bad faith. *See Smith v. Safeco Ins. Co.*, 150 Wash. 2d 478, 484 (2003). To establish a breach of the common law duty of good faith, Plaintiffs must prove Defendant's action "was unreasonable, frivolous, or unfounded." *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wash.

2d. 903, 916 (2007). Reasonableness is assessed in light of all the facts and circumstances of the case. *Anderson v. State Farm Mut. Ins. Co.*, 101 Wash. App. 323, 329–30 (2000). Accordingly, Defendant is only entitled to dismissal of Plaintiffs' bad faith claim on summary judgment if there are no disputed material facts pertaining to the reasonableness of its conduct under the circumstances. *See Smith*, 150 Wash. 2d at 484.

Here, Defendant received Garcia's declaration in April 2018—approximately eight months after Ms. Byrd submitted a UM claim and six months after Plaintiffs filed suit. ECF No. 8 at 9. Defendant did not have knowledge of Garcia's observation of two white trucks or Ms. Byrd's excited utterance to Garcia prior to denying benefits. In light of these circumstances, reasonable minds could only conclude Defendant acted reasonably and in good faith.

Moreover, a reasonable basis for denial of an insured's claim is a complete defense to any claims of bad faith. *Shields v. Enter. Leasing Co.*, 139 Wash. App. 664, 676 (2008). Given the lack of applicable case law on excited utterances in the phantom vehicle context, it was reasonable in this case based on what the Defendant knew at the time to deny Ms. Byrd's UM claim by rejecting the majority of her statements.

As such, the Court grants summary judgment in Defendant's favor on the bad faith claim.

D.  CPA

The CPA prohibits unfair or deceptive acts or practices in the conduct of trade or commerce. Wash. Rev. Code § 19.86.020. A prima facie CPA claim requires a plaintiff to show: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) impacting the public interest; (4) an injury to the business or property; (5) that is proximately caused by the unfair or deceptive act or practice. *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 784–85 (1986). Whether an alleged act or practice is unfair or deceptive is a question of law. *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wash. 2d 133, 155 (1997).

Here, Plaintiffs fail to show a violation of the regulations related to unfair insurance company practices. *See Dombrosky v. Farmers Ins. Co.*, 84 Wash. App. 245, 260 (1996) ("An insured can show an unfair or deceptive practice that impacts the public interest by establishing a violation of the regulations related to unfair insurance company practices as set forth in [Washington Administrative Code chapter] 284-30."). They do not point to any facts in the record indicating that Defendant engaged in unfair or deceptive practices.

Plaintiffs provide no analysis whatsoever; they merely conclude that Defendant did not conduct a reasonable investigation, a reasonable interview, and did not appropriately interpret Washington law. *See* ECF No. 9; ECF No. 16 at 15–

16; ECF No. 21. As failure to meet any element under the CPA is fatal to the claim, *Sorrel v. Eagle Healthcare*, 110 Wash. App. 290, 298 (2002), and Plaintiffs fail to make such a showing for which it would have the burden of proof at trial, *Celotex*, 477 U.S. at 322, Plaintiffs' CPA claim fails as a matter of law.

In any case, in the insurance context, an insurer who has a reasonable basis for denial of an insured's claim has a complete defense to any CPA claims against it. *Shields*, 139 Wash. App. at 676. "Acts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law." *Leingang*, 131 Wash. 2d at 155. As noted above, Defendant had a reasonable, good faith basis for its denial based on case law.

Accordingly, the Court grants Defendant summary judgment on Plaintiffs' CPA claim.

**E.  IFCA**

The IFCA establishes a cause of action when an insurer "unreasonably" denies a coverage claim or benefit payments. Wash. Rev. Code § 48.30.015(1). Plaintiffs argue that Defendant's "denial of benefits, despite the overwhelming amount of evidence corroborating the facts of the accident, was clearly an unreasonable act." ECF No. 9 at 21. They assert that Defendant unreasonably denied the evidence, did not conduct a reasonable investigation, did not reasonably interview Garcia, and did not properly apply Washington law. *Id.* Defendant

contends it acted reasonably because of the lack of corroborating evidence. ECF No. 8 at 24.

In their Complaint, Plaintiffs alleged violations of Washington Administrative Code 284-30-330, 284-30-370, and 284-30-380, which are enumerated in subsection (5) of the IFCA. ECF No. 9-2 at 3; Wash. Rev. Code § 48.30.015(5). However, as with their CPA claim, Plaintiffs point to no facts in the record supporting their claim that Defendant violated any of those regulations, i.e., that Defendant did not follow its normal practice in interviewing Garcia and investigating. Instead, their conclusory statements "merely repeat[]" themselves among claims. *See Berkshire Hathaway Homestate Ins. Co. v. SQI, Inc.*, 132 F. Supp. 3d 1275, 1297 (W.D. Wash. 2015).

And as discussed above, Defendant reasonably applied Washington law and denied the evidence accordingly. As such, a reasonable jury could reach only one conclusion on this record—Defendant acted reasonably in denying benefits. The Court grants Defendant summary judgment on Plaintiffs' IFCA claim.

### IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part both motions.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's partial Motion for Summary Judgment, **ECF No. 6**, is

**GRANTED IN PART AND DENIED IN PART**.

2. Plaintiffs' Motion for Summary Judgment, **ECF No. 9**, is **GRANTED IN PART AND DENIED IN PART**.

3. The Clerk's Office is directed to **ENTER JUDGMENT** for Defendant on Plaintiffs' bad faith, CPA, and IFCA claims.

4. The Clerk's Office is directed to **ENTER JUDGMENT** for Plaintiffs on Plaintiffs' breach of contract claim.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 7th day of November 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge